Herman L. GALLOWAY, Jr., Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 18S00–8604–CR–390.

Supreme Court of Indiana

Oct. 17, 1988.

Jack Quirk, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

After a jury trial, appellant Herman L. Galloway, Jr., was convicted of rape, a class B felony, Ind.Code § 35-42-4-1, and burglary, a class A felony, Ind.Code § 35-43-2-1 (Burns 1985 Repl.). The trial court sentenced Galloway to concurrent terms of fifteen years imprisonment for rape and forty years for burglary.

On direct appeal, Galloway raises five issues:

I. Whether the trial court erred by not making specific findings concerning Galloway's competency to stand trial after Galloway filed a suggestion of insanity;

II. Whether Galloway can be convicted for both rape and burglary if rape is the underlying felony alleged;

III. Whether the evidence is sufficient to sustain the convictions;

IV. Whether the trial court unduly restricted Galloway's cross-examination of the victim; and,

V. Whether the trial court should have granted Galloway a mistrial because of prejudicial statements which the prosecutor made in her final summation.

The evidence at trial showed that E.B. was a 70-year-old woman who lived alone. On March 2, 1985, between 3 a.m. and 5 a.m., Galloway began knocking on her door. He told E.B. that his mother had sent him to see if she wanted sausage. When E.B. came to the door, Galloway forced his way into the house, slammed E.B. to the floor, sat on her stomach and beat her on the face. E.B. pleaded with him to stop beating her and even offered him money. Galloway refused the money, showing her he had money of his own. He then ripped E.B.'s pants down and took his clothes off. He tried to have intercourse with her; however, his penis was too large to fit inside her. He then stuck his tongue in her vagina. After this, he went to the couch, put E.B.'s cap on his head and went to sleep.

After Galloway fell asleep, E.B. went to her window and saw her nephew, Glen Goodman, in front of her house. She motioned for him to come inside and asked him to get rid of Galloway. She told Goodman that Galloway "had done beat [her] to death." Goodman recognized Galloway and told him to leave. Goodman then took

E.B. to his brother's house where she told him about the rape.

Galloway presented three alibi witnesses who accounted for his whereabouts until approximately 4 a.m. on March 2nd. Galloway took the stand and denied raping E.B. or breaking into her house.

### I. *Finding of Incompetency*

■ Galloway argues the trial court should have made a competency determination after he filed a suggestion of insanity. Two court-appointed psychiatrists found Galloway competent, and the trial court did not hold a competency hearing.

Our code requires that the trial court hold a hearing if it "has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense...." Ind.Code § 35–36–3–1 (Burns 1985 Repl.). The appointment of psychiatrists to examine a defendant does not automatically invoke the requirement of a hearing. If the only real evidence before the court indicates sanity rather than insanity, the court is justified in not holding a hearing. *Adams v. State* (1979), 270 Ind. 406, 386 N.E.2d 657.

Galloway's case is similar to *Hadley v. State* (1986), Ind., 496 N.E.2d 67. In that case, two psychiatrists found the defendant competent, the defendant did not request a hearing, and the court did not hold one. We held that Ind.Code 35–36–3–1 did not require a hearing under those circumstances.

### II. *Included Offense*

■ Galloway asserts that he cannot be convicted both for breaking and entering with intent to rape E.B. and for raping her. He contends that rape is an included offense when it is charged as the intended felony. He is wrong. *Quire v. State* (1983), Ind., 449 N.E.2d 1083.

### III. *Sufficiency of the Evidence*

■ Galloway contends that the evidence is insufficient to support both the burglary and the rape convictions. He claims that there evidence does not prove that he was the person who committed the crimes.

At trial, E.B. was unable to identify Galloway positively as the person who broke into her house and raped her. She did state unequivocally, however, that the person Goodman asked to leave was the same person who beat and raped her. Goodman had known Galloway for approximately fifteen years and firmly identified him as the person he asked to leave his aunt's house.

Galloway took the witness stand and presented an alibi defense, claiming that he was at several after-hours clubs until shortly before he was arrested. The jury was entitled to weigh this testimony along with the other evidence in deciding whom to believe and whom not to believe. *Williams v. State* (1982), Ind., 431 N.E.2d 793.

The evidence is sufficient to support the convictions.

### IV. *Cross-examination*

■ Galloway argues that the trial court unduly restricted his cross-examination of E.B. He cites five occasions when the trial judge halted his questioning.

The trial court has broad discretion to regulate the scope of cross-examination. *Sweet v. State* (1986), Ind., 498 N.E.2d 924. To establish an abuse of discretion, Galloway must show how he was prejudiced by the trial judge's actions. *Carter v. State* (1987), Ind., 505 N.E.2d 798.

The trial court sustained objections to repetitive questions concerning E.B.'s identification of Galloway. Appellant argues that these questions were meant to show the jury the weakness of the identification. Each of the questions to which the State objected as being unfair and repetitive had been asked and answered at least once. Galloway had ample opportunity to demonstrate E.B.'s lack of certainty. The trial court was within its discretion in sustaining the State's objections.

### V. *Prosecutorial Misconduct*

■ Galloway argues that the trial court erred by denying him a mistrial after the prosecutor made improper and prejudicial statements in her final summation. He points to two statements. First, the prosecutor said that the crime possibly took

place at 4 or 5 a.m., even though the State's reply to Galloway's notice of alibi stated that it occurred at approximately 3 a.m. Second, the prosecutor implied that Galloway tried to mislead the State by not providing the addresses of the alibi witnesses in the notice of alibi.

The granting of a mistrial rests with the sound discretion of the trial court and is only proper where the defendant is placed in a position of grave peril. *Davenport v. State* (1984), Ind., 464 N.E.2d 1302, *cert. denied*, 469 U.S. 1046, 105 S.Ct. 529, 83 L.Ed.2d 416. Before determining whether the prosecutor's statements placed Galloway in a position of grave peril, we must first decide whether the prosecutor in fact engaged in misconduct. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843.

First, all the evidence presented at trial suggested that the crimes occurred around 4 or 5 a.m. It was not misconduct for the prosecutor to comment on the evidence.

Second, defense counsel stated several times during the trial that the prosecutor had not conducted any pretrial interviews with the alibi witnesses. In her final summation, the prosecutor noted that the defense never supplied her with these witness' addresses. She further implied that there was evidence that Galloway had these addresses when he filed his notice of alibi. It was the sort of barb relatively common in the heat of trial.

After the defense objected to the prosecutor's remarks, the trial judge admonished the jury to remember that the State always has the burden of proving Galloway's guilt beyond a reasonable doubt. He further reminded the jury not to speculate about Galloway's guilt but to consider evidence as it comes from the witnesses, not the attorneys. This sequence of events did not warrant a mistrial. Judge Dailey correctly denied the motion.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.