**Henry Alexander LOWRY, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1081S279.**

Supreme Court of Indiana.

Oct. 27, 1982.

Terry C. Gray, Gary, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Henry Alexander Lowry, was charged by information in two counts with the shooting deaths of two men. He was adjudged guilty of murder upon the verdict of the jury on each count, and in agreement with the recommendation of the jury that the death penalty not be inflicted, received two consecutive sentences of fifty years. This is appellant's first and direct appeal and he raises two issues, namely (1) the sufficiency of evidence to convict, and (2) the propriety of an instruction given to the jury when it returned to the courtroom during deliberations and reported that a verdict could not be reached.

Viewed in a manner favorable to the verdict the evidence showed that appellant and Lamonte Dunn and Harold Randolph, all of whom were charged with these murders, were driving together when they picked up the two putative victims, James Thomas Young, Jr., and Daryl McIntosh. Dunn and Randolph were the primary sources of evidence against appellant. According to their testimony appellant shot and killed both Young and McIntosh. During the car trip, appellant was seated in the back seat with the two victims. A controversy surfaced between them regarding money owed for drugs. Appellant then

shot Young where they sat. The car was stopped and Young was pulled out by Randolph and appellant. Appellant then took money from Young's pocket and shot him again. The remaining four continued on in the car and stopped at another remote location where appellant shot Daryl McIntosh in the head.

The bodies of Young and McIntosh were discovered in a short while in separate weedy areas in the city of Gary. Both died of multiple bullet wounds to the head.

## I.

Appellant contends that the evidence was insufficient to warrant the convictions. In determining this question we do not weigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State,* (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Glover v. State,* (1970) 253 Ind. 536, 255 N.E.2d 657.

In this case appellant premises his claim of insufficiency upon the contention that the credibility of co-defendants, Dunn and Randolph, was so poor as to render their testimony inherently improbable. This claim has as its more specific premise the facts that (1) the two were involved in the murders, (2) they did not come forward with their stories against appellant until he had implicated them, (3) they gave their testimony in return for a favorable plea bargain agreement, (4) appellant had previously been acquitted of another and separate murder wherein the prosecutor had relied upon their trial testimony, and (5) the prosecution agreed to dismiss the murder charge against Dunn altogether and to accept a three year sentence for Randolph, all while demanding the death penalty for appellant.

We considered a similar situation in *Bentley v. State,* (1981) Ind., 414 N.E.2d 573. There a co-defendant provided the sole evidence connecting the accused with the crime of robbery and murder. The co-defendant had three prior felony convictions and testified for the State as part of a plea bargain. We found the evidence sufficient and not within the rare realm of the inherently unbelievable. The testimony of Dunn and Randolph is alike in import in that it serves alone to identify appellant as the triggerman. It is also alike in those elements rendering it suspect. The additional factors present here do not add appreciably to the claim. The prior acquittal of appellant may have been based upon considerations wholly unrelated to the credibility of the two, and the acceptance by the prosecution of a greatly disparate disposition for them could have been based upon the belief that their participation in the murders was as limited as they claimed.

Appellant seeks to buttress his insufficiency claim with the contention that Exhibits 34 and 35, two pairs of blue jeans bearing blood stains, were permitted to be introduced over objection and without a foundation showing a chain of custody. These exhibits were identified in the testimony of Randolph as being the ones worn by him and appellant at the time of the killing of the two victims. We take the insertion of this point within the argument on sufficiency as being illustrative of the importance of the testimony of Randolph to the conviction, of the greater reliance which the prosecution placed upon it, and of its further unreliability.

Based upon the foregoing considerations we cannot say that the testimony of Dunn and Randolph was inherently unbelievable and that the evidence was as a consequence insufficient to warrant conviction.

## II.

In making the next claim, appellant asserts that the trial court committed error when, in response to the return of the jury to the courtroom during deliberations and its announcement that it had been unable to reach a verdict, the trial court stated:

> "That the jury was to remain, they were to continue to deliberate and that he would not call it a hung jury."

Appellant urges that this statement has much in it which is similar to "Allen" instructions which are not approved in Indiana. Cf. *Lewis v. State,* (1981) Ind., 424 N.E.2d 107. Like the State on appeal, we are unable to find any reference in the record to this procedure having been utilized by the trial court. A statement of it is contained in the motion to correct errors, and of course in the appellant's brief. This is not a sufficient record upon which to review the claim. *Bentley v. State, supra.*

[redacted] Even if we were to accept, for purposes of argument, appellant's version of what happened we would in all likelihood find no error committed by the trial judge. The mischief which has led this Court to prefer the path of re-reading all instructions, rather than giving an "Allen" type instruction is the potential which such instruction has to unfairly influence the deliberative processes of the jury. There is little in the court's statement which could serve to condemn it on that basis. This statement does no more than to direct the return of the jury to the jury room to continue its deliberations and to ascribe to it the capacity for further productive discussion.

The convictions are affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.