**Don MILLER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 54S00–8808–CR–773.**

Supreme Court of Indiana.

Dec. 12, 1990.

Susan K. Carpenter, Public Defender, J. Michael Sauer, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Burglary, a Class B felony and Theft, a Class D felony, and a finding of habitual offender status. For the burglary he received the maximum sentence of twenty (20) years, enhanced by thirty (30) years by reason of the habitual finding, for a total of fifty (50) years on that conviction; for the theft he received the maximum sentence of four (4) years, enhanced by twenty (20) years by reason of his habitual status, for a stated total of twenty-four (24) years on that conviction, to be served concurrently with the sentence for burglary.

The facts are: At approximately 8:00 on the evening of August 8, 1987, sixty-nine-year-old Mildred Hurt was in the living room of her home in Crawfordsville, Indiana when she heard the sound of her front door being opened. She went to see who it was and discovered a black man had entered the house. Startled at the sight of the stranger, Hurt asked him who he was and what he wanted. The man mumbled something about "Brown" and, leading him toward the door, Hurt told him no one by that name lived there. After he stepped out the door, the man turned and asked Hurt if he could use her bathroom. She replied in the negative and shut the door. About forty-five minutes later, the same man came back to her door and asked to use her telephone. She told him no, shut the door, and called her son, who lived across the street, and the police, who said they would check it out and told her to lock her doors and "stay put."

Around 11:30 the following morning, a Sunday, Hurt came downstairs into her kitchen and noticed something amiss with her hutch: the "boom box" stereo radio/cassette player that she kept on one of its shelves was unplugged with the power cord dangling over the edge. The General Electric multi-band portable radio she kept beside the boom box was missing. Instantly alarmed by the thought that someone had been in her home and taken her radio, she went over to her son's home. At his suggestion, Hurt went down to the police station and filed a report but, wanting to keep her name and address out of the newspaper, changed her mind and had the officer destroy the report.

The following day, August 10, 1987, appellant, who had been released by the Department of Correction just five days earlier, had his initial interview with his probation officer, Neil Remaklus. Midway through the interview, which took place in

appellant's efficiency apartment, Remaklus noticed a portable radio (later identified as the one taken from Hurt's home) and, considering it odd that a person so recently paroled would have such a radio, questioned appellant about it. Appellant denied knowing how it had come to be in his apartment and said that someone must have put it there to set him up to frame him. Remaklus suggested he turn it in to the township trustee, who managed the apartments where appellant lived, and he did so, repeating his claim of ignorance as to its source. A check with the police by the trustee turned up no reports of lost or stolen radios, so when appellant claimed a week later that he had discovered that the person leaving it in his room had meant for him to have it, it was returned to him.

A couple of weeks later, Hurt discovered through a mutual friend that her neighbor, Elizabeth Buck, had seen a black man carrying a radio exiting Hurt's home by the back door on the day she had discovered her radio missing. Buck later positively identified appellant from each of two six-photograph arrays as the man she had seen with the radio. Hurt positively identified her radio and testified she was "80% sure" that appellant was the same man who had entered her house the night before she discovered her radio missing. It was recovered by police from one of appellant's friends to whom appellant, after his arrest, had relayed a message to secure the radio for him.

Appellant contends the evidence is insufficient to support his burglary and theft convictions. He points to Hurt's equivocal identification of him as the man who entered her home, her inability to select his photograph from an array, and discrepancies in Buck's statements regarding the time she witnessed appellant exiting Hurt's back door and her recollection of the appearance of the radio he was carrying. He argues there is no evidence he moved any impediment to gain entry and thus no proof exists of the "breaking" element of burglary. He maintains the State caused the record to be silent as to that element by its failure to question its witnesses whether any doors or windows of the victim's house had been left open. He cites *Kidd v. State* (1988), Ind., 530 N.E.2d 287 and other cases for the proposition that his possession of Hurt's radio one or two days after it was taken is not sufficient to support his conviction of burglary or of theft.

■■■ On sufficiency review, we will not reweigh the evidence nor judge the credibility of the witnesses. We consider only that evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom, in determining whether there is substantial evidence of probative value to support the jury's verdict. *Miller v. State* (1989), Ind., 544 N.E.2d 141. A burglary or theft conviction may be sustained by circumstantial evidence alone; the unexplained possession of recently stolen property will support an inference of guilt of theft of that property. *Id.*

■■■ Appellant cites *Evans v. State* (1986), Ind., 497 N.E.2d 919 for the proposition that no presumptions may be drawn from a silent record. Here, however, no presumption of "breaking" was involved. Although no direct evidence was presented to prove appellant opened a door or window to gain entry to the victim's home, Buck's direct testimony of having seen appellant exit the house by swinging open the back screen door entitled the jury circumstantially to infer he entered the home in the same manner. *Miller, supra.* While the testimony of any one witness may not have been sufficient to support the burglary and theft convictions, Buck's positive identification of appellant leaving the house carrying a radio, Hurt's testimony that appellant had been in her home the previous night, taken together with the testimony of Remaklus and others that appellant had been in the unexplained possession of Hurt's radio, supported an inference that appellant had taken the radio in question from the victim's home with the intent to deprive the owner of its use and had entered her home with the intent to do so.

The evidence was sufficient to support appellant's convictions.

Appellant contends the trial court erred in allowing the State to present evidence

that he recently had been paroled from prison. Appellant sought a pretrial motion *in limine* to prevent any mention by probation officer Remaklus of appellant's release from prison, his parole status, or why the radio's presence in appellant's room seemed anomalous to the witness. The trial court denied the motion (which was renewed and denied at trial), finding the evidence prejudicial but probative of the circumstances surrounding appellant's possession of the radio, thus relevant and admissible.

■ The State here contends Remaklus's testimony regarding appellant's recent release and parole status was admissible because it was relevant to the likelihood of appellant's legal possession of the stolen radio and because his response to Remaklus's inquiry was probative of his guilty state of mind. Appellant disputes the State's contention, arguing Remaklus's suspicions were purely speculative and unduly prejudicial given that other State's witnesses testified to appellant's possession of the radio.

> "Evidence which is otherwise competent and relevant and which tends to prove or disprove a fact in issue is not inadmissible even though it tends to show guilt of another crime." *Maldonado v. State* (1976), 265 Ind. 492, 495, 355 N.E.2d 843, 846.

We agree with the trial court and the State that in view of the facts brought out in Remaklus's testimony to the effect that appellant could not have possessed such a radio in prison and its purchase would have required his parole officer's prior permission, these circumstances were relevant to appellant's legitimate ownership of the radio and thus were admissible.

Appellant contends the trial court erred in failing to dismiss the habitual offender count as ultimately filed and for failure to specify the county and court of the prior convictions alleged. Appellant was charged with burglary and theft on November 9, 1987 and on December 22, 1987 filed a motion for early trial which the court granted, setting as the trial date February 23, 1988. The trial began on that date at which time the State filed its habitual offender count. Appellant filed a motion to dismiss the count or to exclude evidence, which motion was denied. At the outset of the habitual phase, the trial court, over appellant's objection, allowed the State to amend the habitual count to include the court and county of the prior convictions.

■ Appellant acknowledges that a habitual offender allegation may be filed at any time so long as it does not prejudice the substantial rights of the defendant, citing *Russell v. State* (1986), Ind., 487 N.E.2d 136. He maintains he was prejudiced here by being unable to investigate an alleged Michigan conviction or to prepare to meet the State's identification evidence, and that to have requested a continuance would have forced him to relinquish his right to a speedy trial guaranteed by the state and federal constitutions and by Ind.Crim.Rule 4. However, a request for a continuance, while chargeable to appellant, would not have forced him to relinquish his speedy trial right. He could have refiled for a speedy trial contemporaneously with his motion for a continuance. *See Saperito v. State* (1986), Ind., 490 N.E.2d 274. We have held repeatedly that a trial court may permit the State to charge habitual offender status on the day trial begins. *Steele v. State* (1989), Ind., 533 N.E.2d 1197.

■ Appellant also challenges the timing of the habitual offender filing because the State's proof thereof was not disclosed to him during discovery and the resultant surprise could not have been cured by a continuance, citing *Mauricio v. Duckworth* (7th Cir.1988), 840 F.2d 454, *cert. denied*, 488 U.S. 869, 109 S.Ct. 177, 102 L.Ed.2d 146. In that case, the State's nondisclosure of their witness, who testified in rebuttal to the defendant's alibi, was held incurable by a continuance. In this case, the trial court took judicial notice and spread of record appellant's prior testimony at the bond reduction hearing in which he acknowledged the prior convictions alleged by the State; appellant thus could not have been unfamiliar with them at the habitual offender phase, where he did not seem to be unprepared to meet them. He extensively chal-

lenged the State's exhibits' admissibility even without a continuance. The situation here involved no surprise witness as in *Mauricio;* had appellant truly been unprepared to meet the State's evidence, he should have requested a continuance.

■ Appellant argues the trial court erred at the start of the habitual offender phase in allowing the State to amend the information to add that the theft conviction had been in the Montgomery County, Indiana, Circuit Court and the rape conviction had been in the Wayne County (Detroit), Michigan, Recorder's Court. He maintains that because the initial omission of the court and county of the prior offenses rendered the habitual information insufficient as a matter of law, citing *Shutt v. State* (1954), 233 Ind. 120, 117 N.E.2d 268, the amendment was one not of form but of substance affecting the availability of a defense, citing *Abner v. State* (1986), Ind., 497 N.E.2d 550. He thus reasons the amendment prejudiced his substantial rights and, under Ind.Code § 35–34–1–5(c), should not have been allowed.

However, this Court in *Shutt, supra* noted that the trial court had ample opportunity to correct its error but did not. In *Cornett v. State* (1989), Ind., 536 N.E.2d 501, we found an amendment to the location of a prior conviction did not alter the theory of the prosecution or the character of the offense, and noting that neither the substance of the offense nor the date of commission was amended, and that the prior convictions were not alleged to be unknown to the defendant, we held he was not prejudiced by the amendment. We find the same situation in the case at bar, where only the locations of the prior convictions were amended and, as noted above, the trial court in allowing the amendment took judicial notice of appellant's previous acknowledgment of the prior convictions, including their locations, at the bond reduction hearing. *See Vaxter v. State* (1987), Ind., 508 N.E.2d 809.

The trial court did not err in refusing to dismiss, and allowing the State to amend, the habitual offender information.

■ Appellant contends the trial court erred during the habitual offender phase in admitting State's Exhibits Nos. 26 and 27, documents pertaining to his 1973 Michigan conviction for rape, which he maintains were not properly certified or authenticated. Exhibit No. 26 consists of three pages of Detroit Police Department records: one criminal record sheet and two fingerprint card/arrest records, each page bearing a signed, stamped certification as a true copy by the records certification officer. No. 27 consists of three pages of records from the Recorder's Court of the City of Detroit: an information charging rape, an order of conviction and sentence for that rape, and a case history sheet. Stapled on top of these three sheets is a document certification sheet, sealed and signed by the deputy clerk of the recorder's court.

Appellant argues the exhibits are inadmissible because there is no final certification by a testimonial sponsor, *i.e.*, a public officer with seal of office attesting to the genuineness of the signature and custodial status of the keeper of the records. In *Mayes v. State* (1984), Ind., 467 N.E.2d 1189, we held that a certification by the Clerk of the Recorder's Court of the City of Detroit, similar if not identical to the one attached here to Exhibit 27, complied with the requirements of Ind.Trial Rule 44. *Mott v. State* (1989), Ind., 547 N.E.2d 261 cites *Mayes* for the same proposition.

In *Mayes,* this Court observed that the police "lineup information" did not contain such a certification. However, in that case, the officer authorized to make such a certification appeared and testified in person. This Court observed:

"However, inasmuch as the police officer who prepared the document was present at trial, testified that he prepared the document, and was available for cross-examination, there was no error in admitting the document into evidence." *Mayes, supra* at 1195.

In view of the fact that Exhibit 26 in the case at bar does include the certification of the officer on each page, we hold that it complies with the principles set forth in *Mayes.*

**584**

Appellant also complains that the certification sheet attached to Exhibit 27 states: "The foregoing is correctly taken and copied from the original record." However, the certification sheet is attached to the top of the attached copies of record. He cites *Reed v. State* (1988), Ind., 531 N.E.2d 195 and *Eldridge v. State* (1977), 266 Ind. 134, 361 N.E.2d 155, *cert. denied*, 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287. These cases in fact do hold that a certification page containing the language above does not certify to papers which follow the certificate.

In *Cavendish v. State* (1986), Ind., 496 N.E.2d 46, this Court discussed a situation very similar to that in the case at bar. There we stated:

> "The trial court ruled that this discrepancy was an understandable mechanical error and would not preclude admission of the documents. We agree that the authenticity of the documents was not placed in question by virtue of the fact that the certification was stapled atop the certified documents." *Id.* at 48.

There are situations where papers appended to certified documents are not readily identifiable with those documents and thus cannot be considered as being included in the certification. Situations such as *Cavendish* and the case at bar do not fall into that category. Here, nothing precedes the clerk's certificate. The certificate states that it is certifying to copies of an original record of "People v. Don Hampton Miller, Case No. 73–001709." This certificate is stapled to three pages, the first of which is a copy of an information entitled: "People of the State of Michigan v. Don Hampton Miller" and bears the same cause number. The second sheet is an order of conviction and sentence of Don Hampton Miller under the same cause number. The third page purports to be the record sheet from the court of the city of Detroit showing the same charge of carnal knowledge of a female over sixteen years, naming her, and reciting the disposition of the case. Under the circumstances, the placement of the certificate on top of the papers rather than on the back in no way causes any confusion as to the authenticity of the papers. To the extent that *Reed* and *Eldridge* might be interpreted to the contrary they are expressly overruled.

State's Exhibits Nos. 26 and 27 were properly admitted.

Appellant contends the trial court erred in enhancing both his burglary and theft sentences due to his habitual offender status, citing *McBrady v. State* (1984), Ind., 460 N.E.2d 1222. The State confesses error here, citing *Bennett v. State* (1984), Ind., 470 N.E.2d 1344. In *Frazier v. State* (1986), Ind., 490 N.E.2d 315, we held that the trial court is required to specify which of two predicate felonies is being enhanced by virtue of the habitual offender finding. Accordingly, this cause is remanded to the trial court for such clarification of sentence.

The trial court in all other things is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.